**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| Heng Ren Investments LP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. |
| Sinovac Biotech Ltd., et al., | ) 19-11612-NMG |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

**MEMORANDUM & ORDER**

**GORTON, J.**

This action arises out of a public investment in private equity transaction ("the PIPE transaction") in which nearly 12 million new shares of Sinovac Biotech Ltd. ("Sinovac" or "defendant") stock allegedly were issued and sold to two private investors affiliated with Sinovac's founder and Chief Executive Officer ("CEO"), Weidong Yin ("Yin"), at below-market price. Sinovac contends that proper service has not been made with respect to Yin and that counsel for the company does not currently appear on his behalf.

Plaintiff Heng Ren Investments LP ("Heng Ren" or "plaintiff") submits that the PIPE transaction was intended to dilute the shares of minority shareholders and divest them of

- 1 -

their rights.  Accordingly, in May, 2019, it filed this action in Massachusetts Superior Court for breach of fiduciary duty and wrongful equity dilution.

In July, 2019, defendant Sinovac removed the action to this Court based on diversity jurisdiction and designated it as related to another lawsuit that it had initiated in this Court: Sinovac Biotech Ltd. v. 1Globe Capital LLC et al. ("1Globe"), No. 18-cv-10421-NMG (D. Mass., filed Mar. 5, 2018).  Pending before the Court is Sinovac's motion to dismiss for lack of personal jurisdiction, failure to state a claim and forum non conveniens.  For the reasons that follow, that motion will be denied.

## I.   **Background**

### A. The Parties

Heng Ren is a Boston-based Massachusetts limited partnership and a minority shareholder of Sinovac.  Sinovac is a NASDAQ-listed, publicly-traded biopharmaceutical company that is incorporated in Antigua, West Indies and has its principal place of business in Beijing, China.[1]  The company researches, develops, manufactures and commercializes vaccines for a variety

---

[1] Due to other litigation challenging the legality of the PIPE transaction in 2019, NASDAQ has halted all trading in Sinovac stock for more than two years.

of diseases, including polio, mumps and COVID-19.  It was allegedly founded by Yin, who currently serves as Sinovac's Chairman, President and CEO.

**B. The Facts**

Plaintiff contends that, since at least 2016, Yin and a group of allied investors ("the Yin Group") have "colluded" to "take complete control of Sinovac on the cheap".  Heng Ren asserts that, in January, 2016, the Yin Group submitted to the board of directors a bid to acquire all of Sinovac's shares at below market value in a "going private" transaction.  That bid was later rescinded, however, because other Sinovac investors, together with Sinobioway Group Co. Ltd. ("Sinobioway"), a large, publicly-traded Chinese company, had engineered a counter-offer at a higher price per share.

In March, 2017, Yin purportedly caused Sinovac's board of directors to adopt a "Rights Agreement" which Heng Ren maintains was designed to ensure Yin's control over the company. Specifically, Heng Ren claims that the Agreement included a "poison pill" provision whereby, if any group of stockholders holding 15% or more of Sinovac's stock entered into an agreement to vote their shares in unison, the board would "massively dilute all such stockholders".  Plaintiff asserts that the provision was used as a shield to prevent other investors from

effectively mounting another competing bid against the Yin Group.

In June, 2017, Sinovac announced that it had entered into a definitive agreement with the Yin Group whereby the latter would acquire the company by purchasing all of Sinovac's shares (purportedly at below market value).  Two days later, Sinobioway submitted a revised counter-proposal to acquire all of the shares of Sinovac at a 14.9% premium over the purchase price offered by the Yin Group.  In response, Sinovac once again retracted the agreement and apparently Yin rejected Sinobioway's counter-offer.

Heng Ren further alleges that, in or about April, 2018, Yin and Sinovac received positive clinical trial results with respect to a new polio vaccine which they concealed from the public in order to deflate the company's stock price.  At the same time, the company had apprised two private investors, Vivo Capital, LLC ("Vivo") and Advantech Capital Partners, Ltd. ("Advantech"), of the vaccine's success.  In July, 2018, Sinovac announced that it had issued nearly 12 million shares of its stock in a PIPE transaction with Vivo and Advantech.  Heng Ren contends that the investors were members of the Yin Group who purchased the shares at a discounted price in a further attempt by Yin to gain control of the corporate defendant at below

market value and to dilute the voting interest of minority
shareholders.

Plaintiff avers that, since then: 1) a multitude of
domestic and international litigation has caused NASDAQ to halt
the trading of Sinovac's shares, 2) as a consequence, there is a
"staggering amount of value locked up in Sinovac's illiquid
shares" and 3) Heng Ren has been unable to access its investment
in the company, thereby causing the partnership to sustain
losses and suffer direct damages.

### C. The "Related" Action

In March, 2018, Sinovac filed in this Court a complaint
against the Chiang Li family and 1Globe Capital LLC ("1Globe"),
a company controlled by that family and one of Sinovac's largest
shareholders.  Sinovac seeks to enjoin 1Globe from electing a
new board of directors, acquiring additional Sinovac shares and
voting its existing Sinovac shares.

In response, 1Globe filed counter-claims for securities
fraud and abuse of process in May, 2018.  It alleges, just as
does Heng Ren, that, beginning in 2016, Yin and other members of
the then-board of directors ("the Old Board") have caused
Sinovac to undertake a series of acts to maintain its control
over the company.  In addition to the failed attempts by Yin to
acquire all of Sinovac's shares at below market value, 1Globe

asserts that the Old Board refused to relinquish management and control of the corporation, although it had been voted out of office by a majority of the shareholders (including 1Globe) at an annual meeting held in February, 2018 ("the February election").  Moreover, 1Globe maintains that Sinovac brought the underlying complaint for the ulterior purpose of entrenching the Old Board and furthering Yin's illicit attempt to acquire control of the company.

In August, 2018, one month after the PIPE transaction, 1Globe amended its counter-claims and also moved for a preliminary injunction to enjoin the Old Board from "illegally" issuing the stock it intended to issue to the private investors pursuant to the PIPE transaction.  In support of that motion, 1Globe argues that the transaction violates federal securities law because it was done without the authorization of the legitimate board of directors (i.e., the new board that was elected in February, 2018) and was part of a fraudulent scheme to "prop up" the Old Board.

In October, 2018, this Court denied 1Globe's motion for a preliminary injunction for lack of standing and failure to demonstrate irreparable harm.  That case is currently stayed due to the interminably unresolved appeal of yet another related case in the Eastern Caribbean Supreme Court in the High Court of

Justice, Antigua and Barbuda ("the Antiguan Court"), <u>1Globe Capital, LLC, and Sinovac Biotech Ltd.</u> (Claim No. ANUHCV 2018/0120).

## II. **Motion to Dismiss**

### A. **Lack of Personal Jurisdiction**

Defendant Sinovac asserts that it is not subject to personal jurisdiction in Massachusetts because it has no meaningful contacts with the Commonwealth and none of its business is conducted there.  It adds that this action is "wholly distinct" from <u>1Globe</u> because this case arises from the PIPE transaction which took place nearly four months after Sinovac initiated the lawsuit against 1Globe.

Plaintiff responds that regardless of Sinovac's prior contacts with Massachusetts, if any, defendant has waived its personal jurisdiction defense by initiating a related lawsuit in this Court.  Plaintiff submits that Sinovac marked the instant action as related to <u>1Globe</u> when it filed its notice of removal in this case.  It also asserts that both actions

> involve attempts by investors to stop the PIPE Transaction, a dilutive, self-serving sale of Sinovac shares at an unfairly low price [and] allege a long-running scheme by Defendants to depress the value of Sinovac's shares in order to buy shares on the cheap and tighten Yin's control of the Company – allowing a future windfall.

For those reasons, Heng Ren suggests that the two cases share a common nucleus of operative facts.

### 1. Legal Standard

On a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of showing that the Court has authority to exercise jurisdiction over defendants. Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015).  Where, as here, the Court will decide a motion to dismiss for lack of personal jurisdiction without first holding an evidentiary hearing, the Court applies the "prima facie" standard of review and takes the plaintiff's

> properly documented evidentiary proffers as true and
> construe[s] them in the light most favorable to
> [plaintiff's] jurisdictional claim.

A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016).  A plaintiff cannot, however, rely on "unsupported allegations" and "must put forward evidence of specific facts to demonstrate jurisdiction exists." Id. (internal citations omitted); see also Philips v. Prairie Eye Center, 530 F.3d 22, 26 (1st Cir. 2008) (explaining that, in order for a plaintiff to make a prima facie showing of jurisdiction, it "ordinarily cannot rest upon the pleadings but is obliged to adduce evidence of specific facts.").

In a diversity suit, this Court acts as "the functional equivalent of a state court sitting in the forum state." See Astro-Med, Inc. v. Nihon Kohden America, Inc., 591 F.3d 1, 8 (1st Cir. 2009).  As such, to make a prima facie showing of personal jurisdiction in diversity cases, the plaintiff must typically demonstrate that the exercise of jurisdiction 1) is statutorily permitted and 2) coheres with the Due Process Clause of the Fourteenth Amendment of the United States Constitution. Id.

Those requirements, however, "may be obviated by the defendant's consent to the court's jurisdiction". Marron v. Whitney Group, 662 F. Supp. 2d 198, 200 (D. Mass. 2009).  Thus, where "the defendant has voluntarily submitted [it]self to the jurisdiction of the forum state", a court may bypass the typical jurisdictional analysis. Id.  A defendant manifests such consent by, inter alia,

> failing to raise a jurisdictional defense in a timely manner, by expressing acquiescence to the forum, or by impliedly submitting to the jurisdiction through conduct.

Id. (citing Gen. Contracting & Trading Co. v. Interpole, 940 F.2d 20, 22 (1st Cir. 1991)).  A defendant who initiates another lawsuit in the forum state impliedly submits to that forum's jurisdiction with respect to all actions "arising from the same

nucleus of operative facts, or sharing the same transactional core". Id.

### 2. Application

This Court concludes that Sinovac has submitted to the jurisdiction of this Court because it filed a case in this district which arises from the same nucleus of operative facts as the instant action.  A Court

> is obligated to construe the facts in a light most
> favorable to the [ ] Plaintiff['s] jurisdictional claim,
> whether or not [ ] Defendant disputes those facts.

Marron, 662 F. Supp. 2d at 201.  So construing the facts alleged herein, this Court infers that Sinovac's lawsuit to enjoin 1Globe from electing a new board of directors is part of Yin's continued effort to maintain control of Sinovac through alleged improper means which is the same conduct out of which this action arises. See id.

Furthermore, although the subject PIPE transaction took place nearly four months after Sinovac sued 1Globe, that transaction has been subsequently challenged in 1Globe. Furthermore, the legitimacy of that transaction turns, in part, on the validity of the preceding vote by 1Globe and other shareholders to remove the Old Board which is contested in 1Globe.  In any event, defendant has apparently conceded the connection between the two lawsuits because it designated them

as related when it filed its notice of removal in this case. See
LR, D. Mass 40.1(g)(1) (defining "related" civil cases as those
where at least some of the parties are the same and which either
involve the same or substantially similar issues of fact and/or
arise out of the same transaction or occurrence).

Accordingly, the Court is satisfied that, under the prima
facie standard, 1Globe shares a common transactional core with
this case and finds that, by initiating 1Globe in this Court,
Sinovac has waived its jurisdictional defense here. See Marron,
662 F. Supp. 2d at 201 ("[O]ne who enjoys the full benefits of
access to a forum's courts as plaintiff may not simultaneously
claim immunity from that forum's authority as defendant.").  The
Court will, therefore, deny Sinovac's motion to dismiss for lack
of personal jurisdiction.

B.    **Failure to State a Claim**

1.    **Legal Standard**

To survive a motion under Fed. R. Civ. P. 12(b)(6), the
subject pleading must contain sufficient factual matter to state
a claim for relief that is actionable as a matter of law and
"plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678
(2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570
(2007)).  A claim is facially plausible if, after accepting as
true all non-conclusory factual allegations, the court can draw

- 11 -

the reasonable inference that the defendant is liable for the misconduct alleged. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

When rendering that determination, a court may not look beyond the facts alleged in the complaint, documents incorporated by reference therein and facts susceptible to judicial notice. Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011). A court also may not disregard properly pled factual allegations even if actual proof of those facts is improbable. Ocasio-Hernandez, 640 F.3d at 12. Rather, the relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw. Id. at 13.

### 2. Application

The parties disagree as to whether the substantive law of Massachusetts or Antigua and Barbuda governs this diversity suit. Sinovac contends that Antiguan law applies and that, for that reason, Heng Ren has failed to state a claim. It argues, specifically, that the Antiguan International Business Corporations Act ("the IBCA") sets forth the possible causes of action that Heng Ren, as a stockholder, can assert against Sinovac. Sinovac adds that the IBCA reserves for the Antiguan Court exclusive jurisdiction over claims arising under it.

- 12 -

When a district court's jurisdiction is based upon diversity of citizenship, the court must apply the choice-of-law rules of the forum state. Klaxon v. Stentor Elec. Mfg., 313 U.S. 487, 496 (1941).  For disputes regarding the internal affairs of a corporation, Massachusetts courts typically apply the law of the state of incorporation because "only one State should have the authority to regulate [those] affairs". See Mariasch v. Gillette Co., 521 F.3d 68, 71-72 (1st Cir. 2008) (internal quotation marks and citation omitted).

Sinovac is incorporated in Antigua and thus Antiguan law governs matters of Sinovac's corporate governance and internal affairs.  Those affairs include matters particular to "the relationships among or between [Sinovac] and its current officers, directors, and shareholders", such as the fiduciary duty owed to its minority shareholders. Id. at 72; see also Natale v. Espy Corp., 2 F. Supp. 3d 93, 102-03 (D. Mass. 2014). Even assuming, arguendo, that the internal affairs doctrine dictates that Antiguan law governs this dispute, however, the Court finds that dismissal thereunder would be premature. Defendant has offered only a cursory review of the IBCA and proffered no compelling argument to define its content.[2]  Thus,

---

[2] Although this Session concluded in 1Globe that the IBCA imposes a requirement that a shareholder apply to the Antiguan Court

the Court declines to conclude, at this time, that Heng Ren's claims are barred by that foreign statute.

Federal courts have discretion when determining the contours of foreign law pursuant to Fed. R. Civ. P. 44.1. A court "may consider any relevant material or source" and is permitted, but not required, to conduct its own research. Fed. R. Civ. P. 44.1; Mackley v. Sullivan & Liapakis, P.C., No. 98-cv-8460, 2001 U.S. Dist. LEXIS 21723, at *10-11 (S.D.N.Y. Dec. 27, 2001). It can also direct the parties to brief a particular question with respect to the relevant foreign law and/or demand a more "complete presentation [of that law] by counsel". See Mackley, 2001 U.S. Dist. LEXIS 21723, at *11; see also Fed. R. Civ. P. 44.1 advisory committee's note to 1966 amendments ("[T]he court is free to insist on a complete presentation [of the relevant foreign law] by counsel."); Pfizer Inc. v. Elan Pharm. Research Corp., 812 F. Supp. 1352, 1361 (D. Del. 1993) ("Nothing in Rule 44.1 requires a court to engage in private

---

before he, she, it can file a derivative suit on behalf of a corporation, that determination is not controlling here because in 1Globe 1) the question was whether to enter a preliminary injunction rather than dismiss the complaint and 2) the discussion addressed the IBCA only to the extent it applies to derivative rather than direct shareholder claims. See No. 18-cv-10421-NMG, Dkt No. 73 (D. Mass. Oct. 15, 2018).

research; the rule preserves the court's right to insist upon a complete presentation by counsel on the foreign-law issue.").

Furthermore, although the First Circuit Court of Appeals has yet to render an opinion on the matter, several other circuits have held that whichever party is seeking the application of foreign law has the burden of proving the relevant legal principles thereof. See, e.g., McGee v. Arkel Int'l, LLC, 671 F.3d 539, 546 (5th Cir. 2012) (referencing the plaintiff's "burden of proving foreign law" and requiring that litigants "present to the district court clear proof of the relevant legal principles" (internal quotations and citations omitted)); Baker v. Booz Allen Hamilton, Inc., 358 F. App'x 476, 481 (4th Cir. 2009) (indicating that the "party claiming foreign law applies carries . . . the burden of proving foreign law[.]"); Ferrostaal, Inc. v. M/V Sea Phoenix, 447 F.3d 212, 216 (3d Cir. 2006) (explaining that, because courts have no duty under Fed. R. Civ. P. 44.1 to conduct independent research into foreign law, the parties "carry the burden of proving [it]"); Mut. Serv. Ins. Co. v. Frit Indus., Inc., 358 F.3d 1312, 1321 (11th Cir. 2004) (noting that a district court is not required to conduct research into foreign law if the party urging its application declines to do so); Esso Standard Oil S.A. v. S.S. Gasbras Sul, 387 F.2d 573, 581 (2d Cir. 1967) (holding that,

under the "new Rule 44.1", the party seeking to invoke foreign law "still has the task of persuasion").

Here, Sinovac is the party seeking to invoke Antiguan corporate law but it has provided little advocacy to help this Court define its contours. Koshani v. Barton, 374 F. Supp. 3d 365, 710 (E.D. Tenn. 2019) (noting that, when the parties have provided little to no guidance to the court with respect to foreign law, Fed. R. Civ. P. 44.1 imposes no duty on the court to research the law independently).  It has submitted only a superficial summary of the IBCA and has failed to address whether Heng Ren has stated plausibly, for instance, a claim for aiding and abetting breaches of fiduciary duty under the common law of Antigua and Barbuda. See COMMON LAW (DECLARATION OF APPLICATION) ACT, CHAPTER 92 OF THE LAWS OF ANTIGUA AND BARBUDA (extending the application of English common law to Antiguan courts); see also In re PHC, Inc. Shareholder Litig., 894 F.3d 419, 433 (1st Cir. 2018) ("[I]t is a familiar tenet that when a statute addresses issues previously governed by common law, an inquiring court should presume that—except where explicit changes are made—the legislature intended to retain the substance of preexisting law.").

Accordingly, this Court will deny without prejudice defendant Sinovac's motion to dismiss for failure to state a

claim under Antiguan law.  If Sinovac continues to invoke Antiguan law, it shall provide this Court with a more complete presentation thereof, addressing more fully, <u>inter alia</u>, whether 1) Heng Ren's claims are direct or derivative under Antiguan law, 2) those claims are governed by the IBCA or common law and 3) there is any prerequisite to initiating a lawsuit under the IBCA.

### C.   **Forum Non Conveniens**

Finally, defendant Sinovac argues that this action is most conveniently litigated in Antigua and Barbuda because it deals with the internal affairs of an Antiguan corporation, relates to conduct which occurred outside of Massachusetts and is governed by Antiguan law.  Plaintiff retorts that 1) there is a strong presumption in favor of plaintiff's choice of forum and 2) the public interest favors access to a U.S. court here because this dispute relates to the use (or abuse) of an American securities market.

### 1.   **Legal Standard**

The doctrine of <u>forum non conveniens</u> provides courts with the discretionary power

> to dismiss a case because the chosen forum . . . is so
> inconvenient that it would be unfair to conduct the
> litigation in that place.

Howe v. Goldcorp Investments, Ltd., 946 F.2d 944, 947 (1st Cir.
1991).  That power is limited "by the overarching principle that
a plaintiff's choice of forum should rarely be disturbed."
Adelson v. Hananel, 510 F.3d 43, 53 (1st Cir. 2007) (internal
quotation marks omitted) (quoting Piper Aircraft Co. v. Reyno,
454 U.S. 235, 241 (1981)).  Thus, as explained by the First
Circuit, the moving party bears

> [a] heavy burden of establishing that an adequate
> alternative forum exists and that considerations of
> convenience and judicial efficiency strongly favor
> litigating the claim in the second forum.

Id. (emphasis in original) (internal quotation marks omitted).
That is especially so when, as here, plaintiff brings suit in
its home forum. See Koster v. Lumbermens Mut. Cas. Co., 330 U.S.
518, 524 (1947).

### 2. Application

It is apparently undisputed that the Antiguan Court
provides an adequate alternative forum in which to litigate this
action.  Defendant Sinovac has failed, however, to meet its
burden to establish that a consideration of convenience and
judicial efficiency strongly favors litigating this dispute
there.  Although Antiguan law may govern Heng Ren's claims,
that, without more, fails to rebut the presumption in favor of
plaintiff's choice of forum. See Mercier v. Sheraton Intern.,

<u>Inc.</u>, 981 F.2d 1345, 1357 (1st Cir. 1992) (noting that the application of foreign law should be neither dispositive nor "ascribed undue importance").

The Court finds that both considerations of convenience and judicial efficiency weigh in favor of the current forum.  With respect to convenience, Massachusetts is Heng Ren's domicile and also the state in which Sinovac chose to initiate <u>1Globe</u>, the related lawsuit.  By filing <u>1Globe</u> in this Court, Sinovac has demonstrated its ability (and willingness) to litigate in this forum, thereby defeating any argument that proceeding in Massachusetts would be "so inconvenient that transfer is needed to avoid serious unfairness [to Sinovac]".  <u>Howe</u>, 946 F.2d 944 (internal quotation marks omitted).  As for judicial efficiency, this Session is already tasked with deciding <u>1Globe</u> and it would be efficient to resolve simultaneously the two cases which share a common nucleus of operative facts.

In any event, as Heng Ren submits, there is a strong public interest in making U.S. courts available to resolve disputes such as this, which allegedly involve the improper issuance and sale of shares of a company traded on the NASDAQ stock exchange, an American securities market. <u>See</u> <u>Piper Aircraft Co.</u>, 454 U.S. at 241 n.6 (finding relevant to the <u>forum non conveniens</u> analysis the "local interest in having localized controversies

- 19 -

decided at home"); see also DiRienzo v. Philip Serv. Corp., 294
F.3d 21, 28 (2d Cir. 2002) (explaining that the United States
has an interest in having U.S. courts enforce U.S. securities
laws).  Accordingly, dismissal on forum non conveniens grounds
is unwarranted.

**ORDER**

For the foregoing reasons, the motion of defendant Sinovac
Biotech Ltd. to dismiss the complaint (Docket No. 28) is **DENIED
without prejudice.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated June 3, 2021

- 20 -