## United States District Court
## District of Massachusetts

|  |  |
|---|---|
| Heng Ren Investments LP, | ) |
| Plaintiff, | ) |
| v. | ) |
| Sinovac Biotech Ltd., et al., | ) Civil Action No. 19-11612-NMG |
| Defendants. | ) |

**MEMORANDUM & ORDER**

**GORTON, J.**

This action arises out of a public investment in private equity transaction ("the PIPE transaction"). In that transaction nearly 12 million new shares of Sinovac Biotech Ltd. ("Sinovac" or "defendant") stock were allegedly issued and sold to two private investors affiliated with Sinovac's founder and Chief Executive Officer, Weidong Yin ("Yin"), at below-market price. Plaintiff Heng Ren Investments LP ("Heng Ren" or "plaintiff"), a minority shareholder of Sinovac, contends that, by engaging in the PIPE transaction, Sinovac and Yin breached their fiduciary duties and wrongfully diluted the value of the shares of minority shareholders thereby divesting them of their rights.

Pending before the Court is Sinovac's second motion to dismiss the complaint for failure to state a claim upon which

relief can be granted.[1]  For the reasons that follow, Sinovac's motion will be allowed, in part, and denied, in part.

I.    **Background**

The Court has previously recited at length the facts giving rise to this action and reiterates them here only to the extent that they bear upon the pending motion. See Heng Ren Invs. LP v. Sinovac Biotech Ltd., 542 F. Supp. 3d 59, 62-64 (D. Mass. 2021).

Sinovac is a biopharmaceutical company based in the People's Republic of China.  It engages in the research, development and manufacture of vaccines.  Heng Ren is a Boston-based Massachusetts limited partnership and a minority shareholder of Sinovac.  It alleges that, since 2016, Yin and a group of allied investors have tried to take control of Sinovac "on the cheap" by, inter alia, attempting a "going private transaction" without success and causing Sinovac's board to adopt a poison pill provision which operated to dilute the voting power of minority shareholders who agreed to vote their shares together.

Heng Ren claims that in July, 2018, Yin consummated the PIPE transaction which caused Sinovac to issue large amounts of

---

[1] In its first motion to dismiss, Sinovac asserted that proper service had not been upon Yin and that counsel for the company had not appeared on his behalf.  The pending motion likewise has been filed only on the behalf of Sinovac and no one has yet filed an appearance on behalf of Yin.

company stock to two private investors with whom Yin was associated.  It alleges that 1) Yin and Sinovac suppressed the price of those shares by deliberately concealing material facts about the company, such as its breakthrough in developing a polio vaccine, and 2) the effect of the transaction was to siphon off economic value and voting power from public shareholders to the group led by Yin.  Heng Ren further asserts that since the PIPE transaction Yin and his allies have continued to engage in transactions which plaintiff deems "unusual" and dilutive.

In May, 2019, Heng Ren filed this action in Massachusetts Superior Court for breach of fiduciary duty and wrongful equity dilution.  Sinovac removed the action to this Court based on diversity jurisdiction and designated it as related to another lawsuit that it had initiated in this Court: <u>Sinovac Biotech Ltd.</u> v. <u>1Globe Capital LLC et al.</u>, No. 18-cv-10421-NMG (D. Mass., filed Mar. 5, 2018) ("<u>1Globe</u>").  Sinovac thereafter moved to dismiss this action, contending that 1) the Court lacked personal jurisdiction, 2) Heng Ren had failed to state a claim upon which relief can be granted and 3) Massachusetts was an inconvenient forum.

The Court denied Sinovac's motion but did so without prejudice to its argument that Heng Ren had failed to state a claim.  Because the motion purported to apply the law of Antigua

and Barbuda, the Court instructed Sinovac that if it continued
to invoke Antiguan law it must address more fully whether 1)
Heng Ren's claims were direct or derivative under Antiguan law,
2) those claims are governed by the Antigua and Barbuda
International Business Corporations Act ("the IBCA") or common
law and 3) there is any prerequisite to initiating a lawsuit
under the IBCA. See Heng Ren Invs., 542 F. Supp. 3d at 68.
Shortly thereafter, Sinovac filed the pending motion to dismiss,
accompanied by a declaration from its expert on Antiguan law,
Satcha S-C. Kissoon, and exhibits composed of several hundred
pages of case law and treatises.  Heng Ren counters with a
declaration from its own expert, Leslie Thomas, and a similarly
voluminous set of exhibits.

## II.   **Motion to Dismiss**

### A. Legal Standard

To survive a motion under Fed. R. Civ. P. 12(b)(6), the
subject pleading must contain sufficient factual matter to state
a claim for relief that is actionable as a matter of law and
"plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678
(2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570
(2007)).  A claim is facially plausible if, after accepting as
true all non-conclusory factual allegations, the court can draw
the reasonable inference that the defendant is liable for the

misconduct alleged. <u>Ocasio-Hernandez</u> v. <u>Fortuno-Burset</u>, 640 F.3d 1, 12 (1st Cir. 2011).

When rendering that determination, a court may not look beyond the facts alleged in the complaint, documents incorporated by reference therein and facts susceptible to judicial notice. <u>Haley</u> v. <u>City of Boston</u>, 657 F.3d 39, 46 (1st Cir. 2011). A court also may not disregard properly pled factual allegations even if actual proof of those facts is improbable. <u>Ocasio-Hernandez</u>, 640 F.3d at 12. Rather, the relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw. <u>Id.</u> at 13.

### B. Application

#### i. Governing Law

As a preliminary matter, the Court must determine whether the law of Massachusetts or Antigua and Barbuda governs the present dispute. When a district court's jurisdiction is based upon diversity of citizenship, the court must apply the choice-of-law rules of the forum state. <u>Klaxon</u> v. <u>Stentor Elec. Mfg.</u>, 313 U.S. 487, 496 (1941). For disputes regarding the internal affairs of a corporation, Massachusetts courts typically apply the law of the state of incorporation because "only one State should have the authority to regulate [those] affairs". <u>See</u> <u>Mariasch</u> v. <u>Gillette Co.</u>, 521 F.3d 68, 71–72 (1st Cir. 2008)

(internal quotation marks and citation omitted).  Sinovac is incorporated in Antigua and thus Antiguan law governs matters of Sinovac's corporate governance and internal affairs.  Those affairs include matters particular to the "relationships among or between [Sinovac] and its current officers, directors, and shareholders", such as the fiduciary duty owed to its minority shareholders. Id. at 72, see also Natale v. Espy Corp., 2 F. Supp. 3d 93, 102-03 (D. Mass. 2014).

Heng Ren asserts claims for: 1) breach of fiduciary duty, against Yin, 2) aiding and abetting that breach, nominally against Yin but in effect against Sinovac, and 3) wrongful equity dilution resulting from the PIPE transaction, against both defendants.  Those claims concern the relationship between Sinovac, its executive, Yin, and its shareholder Heng Ren and therefore the Court applies Antiguan law to resolve them. See Mariasch, 521 F.3d at 72, Freid v. Gordon, No. 09-10928, 2011 U.S. Dist. LEXIS 31319 at *7-8 (D. Mass. Mar. 25, 2011) (applying internal affairs doctrine to claims "involving" or "based on" breaches of fiduciary duty).

### ii.  Prerequisites to Suit under Antiguan Law

Applying Antiguan law, the claims asserted by Heng Ren arise under the IBCA which is the Antiguan statute governing business and corporate affairs.  The parties and their experts

dispute whether the IBCA imposes prerequisites to suit requiring Heng Ren to bring its claims in Antiguan courts.

Heng Ren's complaint implicates several sections of the IBCA.  Section 201 concerns derivative actions and provides that a complainant may "apply to the court" for leave to bring such an action.  Section 2 defines "the court" as the High Court of Antigua and Barbuda ("the High Court").[2]  Section 202 requires that "the court" make certain preliminary findings before granting leave to file a derivative action, namely, that the complainant has provided notice to the directors and is proceeding in good faith and in the interest of the corporation.

Section 204 pertains to direct actions.  It similarly provides that a complainant shareholder may apply to "the court" for an order to rectify the oppressive or unfairly prejudicial actions of a corporation, its directors or its affiliates. Unlike Section 201, Section 204 does not require that the court make preliminary findings prior to the commencement of an action.

Sinovac contends that the use of the term "the court" in Sections 201, 202 and 204, considered in light of Section 2,

---

[2] The High Court is the superior court of original jurisdiction for Antigua and Barbuda appeals from which are taken to the Court of Appeal.  Appeal from that Court is to the Judicial Committee of the Privy Council in London, U.K., which is the highest court of appeals for Antigua and Barbuda.

vests exclusive jurisdiction over direct and derivative claims
in the High Court.  Heng Ren disagrees and asserts that the
application requirements in Sections 201 and 204 are procedural
rules rather than conditions precedent to the exercise of its
substantive rights.  The distinction is significant because,
while a federal court sitting in diversity applies the
substantive law of the forum state (here Antiguan law, as
directed by Massachusetts choice-of-law rules), it applies its
own procedural law.  See Haley, 657 F.3d at 53, Chan v.
Wellington Capital Mgmt. Co. LLP, 424 F. Supp. 3d 148, 153
(D. Mass. 2019) (applying federal procedural law to employment
dispute arising under the substantive law of Hong Kong).

This Court has previously addressed Section 201 as it
pertained to the 1Globe action.  See 1Globe, 2018 U.S. Dist.
LEXIS 177304 at *15-17.  There, it concluded that Section 201
imposes what amounts to a demand requirement, the content of
which is substantive law of the forum state. Id. (citing Kamen
v. Kemper Fin. Servs., 500 U.S. 90, 101 (1991)) (holding that
content of the demand requirement is defined by the law of the
state of incorporation).

This Court has not previously addressed Section 204
relative to direct claims but now concludes that the section
contains neither a demand requirement nor any other element of
substantive law.  Unlike Sections 201 and 202 which impose a set

of preliminary requirements upon a plaintiff who seeks to proceed with a derivative action, Section 204 states simply that the plaintiff may "apply to the court" for relief, specifically an order pursuant to that section.  The remainder of the section, which provides the legal standard with which the plaintiff must comply and the relief available, likewise imposes nothing akin to the pre-filing requirements of Sections 201 and 202.  Thus, while Sections 201 and 202 impose conditions precedent to suit in the form of demand requirements of the sort held to be substantive in Kemper, Section 204 pertains to routine procedural matters common to any legal system in which relief may be sought from courts.

Novatrust Ltd. v. Kea Investments Ltd., [2014] EWHC 4061 (Ch), a decision issued by the English High Court of Justice, Chancery Division, and cited by both experts, is similarly distinguishable.  Novatrust applies a British Virgin Islands ("the BVI") statute which, similar to Sections 201 and 202 of the IBCA, requires a prospective plaintiff in a derivative action to obtain leave to file from a domestic court.  The statute states that, except as provided therein,

> a member is not entitled to bring or intervene in any proceedings in the name of or on behalf of a company.

Id. at [32] (citing the BVI Business Companies Act of 2004).

Faced with substantially the same question presented to this Court, the English Court held that the subject provision constitutes a "condition precedent to the right" of a shareholder plaintiff to bring a derivative action and is therefore substantive law. Id. at [38].  Accordingly, the Novatrust plaintiff was required to seek relief in the first instance from the courts of the British Virgin Islands and was foreclosed from bringing a derivative action in the English Court. Id.  The English Court noted, however, that absent that provision, it would have held the requirement to apply for leave to file to be procedural. Id.

Section 204 does not contain a similar provision and thus, unlike Novatrust and Sections 201 and 202 of the IBCA, it does not impose a condition precedent upon the exercise of a plaintiff's right to bring a direct action.  Rather, it provides the procedural means by which such an action may be brought and the substantive rights of the plaintiff shareholder may be vindicated.

Finally, Sinovac contends that use of the term "the court" in Sections 201, 202 and 204 makes jurisdiction for claims arising under those sections exclusive in the Antiguan High Court.  The Court is skeptical but the argument is unavailing in any event because exclusive jurisdiction provisions are "procedural rather than substantive law" and are therefore

superseded by federal procedure. <u>Chan</u>, 424 F. Supp. 3d at 153,
<u>see</u> <u>also</u> <u>Crider</u> v. <u>Zurich Ins. Co.</u>, 380 U.S. 39, 42 (1965)
(holding that domestic state statute which purports to provide
exclusive remedies for injured employees can be displaced or
supplemented by law of remedies of other states).   To the
extent Sections 201 and 202 and the BVI provision at issue in
<u>Novatrust</u> assign jurisdiction to a particular court, it is
because they (unlike Section 204) afford access to a substantive
right only through application to that court, as has been
previously discussed.

In sum, Heng Ren may bring a direct claim under Section 204
in this Court and may do so without first applying to the
Antiguan High Court.  It may not, however, bring a derivative
claim under Section 201 in this Court without first obtaining
leave to file from the Antiguan High Court which it has neither
sought nor obtained with respect to the claims asserted in this
action.

### iii.  Application of Fed. R. Civ. P. 12(b)(6)

Having determined that Section 204 does not bar Heng Ren
from proceeding in this Court, we turn to the question of
whether plaintiff has stated a claim upon which relief can be
granted pursuant to that section or other Antiguan authority.

Heng Ren's first and second claims allege, respectively,
breach of fiduciary duties (by Yin) and aiding and abetting that

breach (by Sinovac).  While Sinovac contends that those claims, designated by Heng Ren as direct, are actually derivative and thus barred by Sections 201 and 202, the Court declines to address the issue because it is irrelevant.  If direct, the claims fail because Antiguan law does not recognize a fiduciary duty owed by a director or controlling shareholder to minority shareholders subject to exceptions not material here, a matter upon which both experts agree.  If derivative, the claims are moot because Heng Ren failed to obtain leave to file under Section 201 from the Antiguan High Court.

Plaintiff's third claim, styled as a claim for wrongful equity dilution, is, however, cognizable as a direct claim under Section 204. Rodriguez v. Municipality of San Juan, 693 F.3d 168, 173 (1st Cir. 2011) (explaining that courts look to the substance of a claim rather than its label).  Section 204 provides that if a corporation acts in a manner

> that is oppressive or unfairly prejudicial to or that unfairly disregards the interests of any shareholder or debenture holder, creditor, director or officer of the corporation, the court may make an order to rectify the matters complained of.

Section 204 has been subject to little interpretation by Antiguan courts and the parties cite only one case from the Court of Appeal concerning the section, Marcus A. Wide and Hugh Dickson v. Amicus Curiae (ANUHCVAP2015/00039, Sept. 22, 2017) ("Wide & Dickson").  The parties' experts agree, however, that

judicial decisions from other Commonwealth jurisdictions may be persuasive in the absence of binding authority from either the Court of Appeal or the Privy Council.

Accordingly, plaintiff's expert directs the Court to several cases from English and Canadian courts including BCE Inc v. 1976 Debentureholders [2008] 3 S.C.R. 560 (Can.), a decision issued by the Supreme Court of Canada with respect to a claim of shareholder oppression brought under the Canada Business Corporations Act ("the CBCA"). This Court considers the BCE decision to be of particular relevance to the interpretation of the IBCA because the Court of Appeal has noted that Canada is a jurisdiction "in which the unfair prejudice legislation is most developed" and has looked to the CBCA and related Canadian jurisprudence for guidance in interpreting Section 204. Wide & Dickson at para. 26. Because of the similarity of the CBCA and the IBCA and the Court of Appeal's recognition of Canadian case law as persuasive authority, this Court concludes that an Antiguan court would interpret Section 204 consistently with the Supreme Court of Canada's interpretation of the CBCA.

In BCE, the Supreme Court of Canada explained that a court considering a claim of oppression should

> look first to the principles underlying the oppression
> remedy, and in particular the concept of reasonable
> expectations. If a breach of a reasonable expectation is
> established, [the court] must go on to consider whether the

conduct complained of amounts to "oppression", "unfair
prejudice" or "unfair disregard".

BCE at para. 56.  Whether a plaintiff's expectations were
reasonable is an objective inquiry which depends upon context.
Id. at para. 62.  Relevant contextual factors, while "impossible
to catalogue exhaustively" include general commercial practice,
the nature of the corporation, steps the plaintiff could have
taken to protect itself and the fair resolution of conflicting
interest between corporate stakeholders. Id. at para. 71-72.  In
general, it may be inferred that a stakeholder has a reasonable
expectation of fair treatment.  Id.

     With respect to the second step, the BCE court instructed
that not every failure to meet a stakeholder's reasonable
expectations constitutes a harm cognizable under the statute.
Id. at para. 89.  Rather, to constitute oppression, the conduct
at issue must be "burdensome, harsh and wrongful", "a visible
departure from standards of fair dealing" or an "abuse of
power". Id. at para. 92.

     A breach of reasonable expectations which results in unfair
prejudice or unfair disregard also violates both the CBCA and
the IBCA.  Unfair prejudice is "generally seen as involving
conduct less offensive than oppression" and may include, inter
alia, squeezing out a minority shareholder, failing to disclose
related party transactions, adopting a poison pill provision.

Id. at para. 93.  Unfair disregard is less serious still and may include conduct such as improperly reducing a shareholder's dividend or failing to deliver property belonging to the plaintiff. Id. at para. 94.

Considering the IBCA in light of BCE and the pleading requirements of Fed. R. Civ. P. 12(b)(6), this Court concludes that Heng Ren has stated a claim under Section 204.  Heng Ren alleges that the defendants sold Sinovac stock at artificially reduced prices in order to dilute the voting power of minority shareholders.  Those allegations, if proven, would establish that Yin and Sinovac acted in a manner that contravened Heng Ren's reasonable expectations and at least unfairly disregarded the interests of the plaintiff and other minority shareholders of Sinovac.  Accordingly, the motion to dismiss will be denied with respect to that claim.

**ORDER**

For the foregoing reasons, the motion of defendant Sinovac Biotech Ltd. to dismiss plaintiff's first amended complaint (Docket No. 45) is, with respect to Counts I and II, **ALLOWED,** but otherwise, **DENIED.**

**So ordered.**

      /s/ Nathaniel M. Gorton
      Nathaniel M. Gorton
      United States District Judge

Dated March 3, 2022