# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

HENG REN INVESTMENTS LP,

                    Plaintiff,

       v.

SINOVAC BIOTECH LTD. and
WEIDONG YIN,

                  Defendants.

Civil Action No. 1:19-cv-11612-NMG

**ORAL ARGUMENT REQUESTED**

### DEFENDANT SINOVAC BIOTECH LTD.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, FOR CERTIFICATION UNDER 28 U.S.C. § 1292(b) AND FOR A STAY OF PROCEEDINGS

LATHAM & WATKINS LLP

Eric F. Leon (*pro hac vice*)
Jooyoung Yeu (*pro hac vice*)
1271 Avenue of the Americas
New York, New York 10020
(212) 906-1200

J. Christian Word (*pro hac vice*)
555 Eleventh Street NW
Washington, D.C. 20004
(202) 637-2200

William J. Trach (BBO # 661401)
200 Clarendon Street
Boston, Massachusetts 02116
(617) 948-6000

*Attorneys for Sinovac Biotech Ltd.*

March 21, 2022

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT .......................................................................................................1

ARGUMENT ...............................................................................................................................3

I.     THE COURT SHOULD RECONSIDER ITS DENIAL OF SINOVAC'S
       MOTION TO DISMISS PLAINTIFF'S WRONGFUL DILUTION CLAIM ...................3

II.    IN THE ALTERNATIVE, THE COURT SHOULD CERTIFY ITS RULING
       FOR INTERLOCUTORY APPEAL AND STAY THE PROCEEDINGS........................9

CONCLUSION...........................................................................................................................12

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Alvi v. Misir,*
2004 CarswellOnt 5302 (Can. Ont. S.C.J. [Commercial List]) .................................................6

*Army v. CitiMortgage, Inc.*,
140 F. Supp. 3d 149 (D. Mass. 2015) .......................................................................................9

*BCE Inc. v. 1976 Debentureholders*
[2008] 3 S.C.R. 560 (Can.) ......................................................................................................4

*Brookfield Asset Mgmt., Inc. v. Rosson*,
261 A.3d 1251 (Del. 2021) ...............................................................................................3, 7, 8

*Jaguar Fin. Corp. v. Alternative Earth Res. Inc.*,
2016 BCCA 193 (Can. B.C. C.A.)...........................................................................................4

*Kakule v. Progressive Cas. Ins. Co.*,
No. 06-4995, 2007 U.S. Dist. LEXIS 44942 (E.D. Pa. June 20, 2007)...................................9

*Marquis v. FDIC,*
965 F.2d 1148 (1st Cir. 1992)................................................................................................11

*MAZ Partners LP v. Shear,*
204 F. Supp. 3d 365 (D. Mass.), *on reconsideration in part*,
218 F. Supp. 3d 132 (D. Mass. 2016) .......................................................................................7

*MAZ Partners, LP v. Shear*,
No. 11-11099-GAO, 2011 U.S. Dist. LEXIS 171232
(D. Mass. Sept. 2, 2011) ........................................................................................................11

*Meijer, Inc. v. Ranbaxy Inc.*,
245 F. Supp. 3d 312 (D. Mass. 2017) (Gorton, J.).............................................................10, 11

*Mercer Gold Corp. (Nevada) v. Mercer Gold Corp. (B.C.)*,
2012 BCSC 322 (Can. B.C. S.C.).....................................................................................2, 5, 6

*NPS, LLC v. Ambac Assurance Corp.*,
706 F. Supp. 2d 162 (D. Mass. 2010) .....................................................................................11

*NPV Mgmt. Ltd. v. Anthony*,
2003 NLCA 41 (Can. Nfld. C.A.)............................................................................................6

*NPV Mgmt. Ltd. v. Anthony*,
2007 NLTD 61 (Can. Nfld. T.D.) .............................................................................................6

*Pente Inv. Mgmt. Ltd. v. Schneider Corp.*,
   1998 CarswellOnt 4035 (Can. Ont. C.A.)................................................................7

*Philip Morris Inc. v. Harshbarger*,
   957 F. Supp. 327 (D. Mass. 1997) ........................................................................9

*Rea v. Wildeboer*,
   2015 ONCA 373 (Can. Ont. C.A.).................................................................2, 5, 6

*Robak Indus. Ltd. v. Gardner*,
   2007 BCCA 61 (Can. B.C. C.A.).....................................................................5, 6

*Ruiz Rivera v. Pfizer Pharms., LLC*,
   521 F.3d 76 (1st Cir. 2008).............................................................................3, 4

*SEC v. Rocklage*,
   No. 05-CV-10074-MEL, 2005 U.S. Dist. LEXIS 53804 (D. Mass. Dec. 14, 2005)..........9, 11

*Shrader v. CSX Transp., Inc.*,
   70 F.3d 255 (2d Cir. 1995)................................................................................4

*Simmons v. Galvin*,
   No. 01-11040-MLW, 2008 U.S. Dist. LEXIS 132295 (D. Mass. Jan. 16, 2008)..............10, 11

*Sinclair v. Ziff Davis, LLC*,
   No. 18-CV-790 (KMW), 2020 U.S. Dist. LEXIS 110627 (S.D.N.Y. June 24, 2020)..............8

*United States v. Joseph*,
   No. 19-cv-10141-LTS, 2020 U.S. Dist. LEXIS 182966 (D. Mass. Oct. 2, 2020)..................12

*Wang v. Gen. Motors, LLC*,
   No. 18-10347, 2019 U.S. Dist. LEXIS 74166 (E.D. Mich. May 2, 2019) .............................10

## STATUTES

28 U.S.C. § 1292(b) ...........................................................................................1, 3, 9

Defendant Sinovac Biotech Ltd. ("Sinovac") respectfully moves for reconsideration of the Court's denial, in part, of Sinovac's motion to dismiss Plaintiff's First Amended Complaint (Dkt. No. 39) ("FAC"), as set forth in the Court's March 3, 2022 Memorandum and Order (Dkt. No. 58) (the "Order"), or, in the alternative, for certification of an interlocutory appeal of that denial pursuant to 28 U.S.C. § 1292(b), and a stay of proceedings pending disposition of this motion and of any related appeal.[1]  Sinovac's instant motion turns on a discrete question of law:  whether Plaintiff's claim for "wrongful dilution" is a direct or derivative cause of action under Antigua law.  In resolving this question, the Court properly looked to Canadian law, but Sinovac respectfully submits that a more detailed explication of Canadian law shows clearly that Plaintiff's claim is derivative, and not direct.

## PRELIMINARY STATEMENT

Plaintiff's sole remaining cause of action for "wrongful dilution" arises out of Sinovac's July 2018 private investment in private equity ("PIPE") transaction.  But the dilution of which Plaintiff complains is derivative of the harm to Sinovac itself and, in fact, is the same dilution experienced by each of Sinovac's shareholders.  That is a quintessential derivative claim.

Pursuant to the PIPE transaction, which was unanimously approved by Sinovac's five-member board, Sinovac issued 11.8 million shares to private investors in exchange for gross proceeds of $86.73 million.  Sinovac used the proceeds to fund, among other things, research for vaccine projects.  Plaintiff purports to challenge the PIPE transaction directly, claiming that the transaction "dramatically undervalued" Sinovac, and constituted an "improper transfer of economic value and voting power from public shareholders (including Plaintiff) to controlling

---

[1] Unless otherwise indicated, internal citations and quotation marks are omitted, emphasis is added, and citations to "Ex.__" refer to exhibits attached to the Declaration of Jooyoung Yeu, submitted herewith.

shareholders led by Yin." FAC ¶¶ 58, 87. But Plaintiff does not (and cannot) allege any direct, rather than derivative, injury stemming from the so-called "dilutive" PIPE transaction. Instead, any alleged dilution to Plaintiff's shares resulting from the PIPE transaction is, by definition, derivative of the injury to Sinovac itself. Indeed, it is only if Sinovac itself received inadequate consideration in the PIPE transaction that Plaintiff (or any other Sinovac shareholder) can complain of "wrongful" dilution.

Plaintiff's inability to allege a direct injury is fatal to its direct "oppression" claim under Canadian (and by extension, Antiguan) law, and the Court should reconsider its denial, in part, of Sinovac's motion to dismiss. In the Order, the Court held that Plaintiff's "claim for wrongful equity dilution is . . . cognizable as a direct claim under Section 204" of the Antigua International Business Corporations Act ("IBCA"). Order at 12. In reaching its holding, the Court noted that "Section 204 has been subject to little interpretation by Antiguan courts," and relied heavily on a 2008 decision issued by the Supreme Court of Canada because "of the similarity of the [Canadian Business Corporations Act] and the IBCA and the [Antigua] Court of Appeal's recognition of Canadian case law as persuasive authority." *Id*. at 12-13. But the Canadian authority on which the Court relied does not address the threshold question of whether a claim for wrongful dilution is a direct or derivative claim under Canadian law. Other Canadian cases, however, have made clear that, for a direct oppression claim to lie, the "impugned conduct must be 'oppressive' of or 'unfairly prejudicial' to, or 'unfairly disregard' *the interests of the complainant*" personally, and "not simply the complainant's interests as a part of the collectivity of stakeholders as a whole." *Rea v. Wildeboer*, 2015 ONCA 373, paras. 34-35 (Can. Ont. C.A.) (Ex. 8). Where, as here, Plaintiff fails to identify a personal harm distinct from the alleged injury to the corporation, a direct oppression claim fails. *See Mercer Gold Corp. (Nevada) v. Mercer Gold Corp. (B.C.)*, 2012 BCSC

322, para. 39 (Can. B.C. S.C.) (Ex. 7).  Delaware law, which this Court often considers in analyzing issues of corporate law, is exactly the same.  *See Brookfield Asset Mgmt., Inc. v. Rosson*, 261 A.3d 1251, 1266 (Del. 2021) (claims are "exclusively derivative" where they "allege an overpayment (or over-issuance) of shares to the controlling stockholder constituting harm to the corporation for which it has a claim to compel the restoration of the value of the overpayment").  Thus, under clear-cut Canadian and Delaware law, Plaintiff's wrongful dilution claim here is exclusively derivative in nature—a compelling reason for the Court to reconsider its decision and reach the same result under Antigua law.

If reconsideration is denied, Sinovac respectfully asks that the Court modify the Order to certify it for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  The issue raised above— whether an action alleging wrongful dilution of all shareholders may be brought as a direct action under Section 204 of the IBCA, or instead must be brought as a derivative action under Section 201 of the IBCA—involves a controlling question of Antigua law that no court in Antigua (or the First Circuit) has addressed, and an immediate appeal from the Court's Order would materially advance the ultimate termination of this litigation.  Indeed, given the Court's dismissal of Plaintiff's other claims, reversal of the Court's denial of Sinovac's motion to dismiss Plaintiff's remaining wrongful dilution claim would end the present litigation, and require Plaintiff to seek leave of an Antigua court to pursue its derivative claims under Antigua law.

## ARGUMENT

## I.   THE COURT SHOULD RECONSIDER ITS DENIAL OF SINOVAC'S MOTION TO DISMISS PLAINTIFF'S WRONGFUL DILUTION CLAIM

The Court has "substantial discretion and broad authority to grant or deny" a motion for reconsideration.  *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 81-82 (1st Cir. 2008).  A motion for reconsideration should be granted if the movant shows a manifest error of law, newly

discovered evidence, or that the Court "has made an error not of reasoning but apprehension." *Id.*; *see also Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (While "a motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided[,] . . . in light of [defendant's] introduction of additional relevant case law and substantial legislative history, we cannot say that the district court's decision to reconsider its earlier ruling was an abuse of discretion.").

Here, relying on the Supreme Court of Canada's decision in *BCE Inc. v. 1976 Debentureholders* [2008] 3 S.C.R. 560 (Can.) (Ex. 6), the Court concluded that Plaintiff's allegations in support of its wrongful dilution claim—that "the defendants sold Sinovac stock at artificially reduced prices in order to dilute the voting power of minority shareholders"—sufficiently "stated a claim under Section 204." Order at 15. But whether Plaintiff stated a claim under Section 204 is not the issue; rather, the issue is whether that claim is direct or derivative in nature, and *BCE* nowhere addresses that issue. To the contrary, *BCE*—which involved debenture holders seeking to challenge a leveraged buyout that would increase the amount of debt in the defendant company, and in turn increase the risk of default associated with plaintiffs' debentures— merely analyzes the elements of an oppression claim under a Canadian statute that mirrors Section 204 of the IBCA. *BCE*, 3 S.C.R. 560, paras. 1, 50-52 (Ex. 6). There was no dispute in *BCE* that plaintiffs had suffered direct harm, and thus there was no occasion to consider whether a wrongful dilution claim is derivative or direct in nature. *Id.* paras. 99-100. As Canadian courts have recognized, *BCE* "cannot be interpreted as authority to collapse the distinction between oppression and derivative actions," including the requirement that a shareholder pursuing a direct oppression claim must "show some separate and distinct claim beyond a potential loss of the share value." *Jaguar Fin. Corp. v. Alternative Earth Res. Inc.*, 2016 BCCA 193, para. 183 (Can. B.C. C.A.) (Ex.

4

9); *see also Rea*, 2015 ONCA 373, para. 32 (Ex. 8) ("no overlap between the derivative action and the oppression remedy" where appellants did not assert that "their personal interests as shareholders ha[d] been adversely affected in any way other than the type of harm that has been suffered by all shareholders as a collectivity").

Under Canadian law, which this Court properly found instructive, a shareholder plaintiff pursuing a direct oppression claim must identify both (i) an "independent relationship" with the alleged wrongdoer and (ii) an "independent loss" from that of the company to whom the wrong has been done. *See Mercer*, 2012 BCSC 322, para. 39 (Ex. 7). Alleged losses that are merely "reflective" of, and collateral to, an injury to the corporation do not suffice. *See Robak Indus. Ltd. v. Gardner*, 2007 BCCA 61, para. 34 (Can. B.C. C.A.) (Ex. 4) ("Loss reflective of a loss suffered by the company is not the shareholder's personal loss."). Were the law otherwise, any shareholder could circumvent the procedural requirements of a derivative action through the mere expedient of alleging that they had been "oppressed" by a corporate transaction that was equally dilutive of all shareholders. Such a result would make direct actions the rule, rather than the exception, and subvert the "legislative objectives and concerns" behind the procedural requirements of the derivative statute, including "avoiding strike suits, meritless actions and a multiplicity of proceedings against the corporation." *Rea*, 2015 ONCA 373, para. 37 (Ex. 8).

Here, Plaintiff must (but does not) allege an independent relationship to either Sinovac or Mr. Yin, or a personal loss distinct from the alleged harm to the company. Indeed, Plaintiff openly admits that its claims impact all shareholders—which includes Mr. Yin—and are not personal in nature, alleging throughout the FAC that "Defendants breached their fiduciary duties to ***minority shareholders*** of the Company by entering into the Dilutive PIPE Transaction," FAC ¶ 1, and that the "Dilutive PIPE Transaction is an improper transfer of economic value and voting power from

5

***public shareholders*** (including Plaintiff) to controlling stockholders led by Yin," *id.* ¶ 6.  Canadian courts time and again have found that absent allegations of a personal, rather than collective, harm, substantially similar claims "fall within the ambit of a derivative action," and "outside the scope" of a direct oppression action.  *See NPV Mgmt. Ltd. v. Anthony*, 2003 NLCA 41, paras. 40, 43 (Can. Nfld. C.A.) (Ex. 2) (claims arising out of "[r]eduction in the value of shares" suffered by all shareholders constituted derivative, rather than direct oppression claim); *Mercer*, 2012 BCSC 322, para. 43 (Ex. 7) (claims arising out of "alleged 'pump and dump' scheme which resulted in the alleged diminution of the shares in Mercer Gold held by Mercer BC" constituted derivative, rather than direct oppression claim); *Rea*, 2015 ONCA 373, para. 46 (Ex. 8) (claims arising out of alleged "misappropriation of corporate property" established "losses sustained by the corporation to its financial bottom line—*i.e.*, to the collectivity of shareholders as a whole—and not to any particular shareholder, including the appellants, individually"); *Alvi v. Misir*, 2004 CarswellOnt 5302, para. 58 (Can. Ont. S.C.J. [Commercial List]) (Ex. 3) (claims arising out of alleged breach of "fiduciary duty in equity" constituted derivative, rather than direct oppression claim); *NPV Mgmt. Ltd. v. Anthony*, 2007 NLTD 61, paras. 98, 101-102 (Can. Nfld. T.D.) (Ex. 5) ("Each of these allegations [including 'the placing of Terrence Daley in a conflict of interest through his appointment as Chief Executive Officer of Conpak during this time'] either constituted harm done to the shareholders as a group, or were challenges to the quality of internal management.  Either way, the court found that none of these claims could be pursued by way of personal action, as they were derivative in nature."); *Robak*, 2007 BCCA 61, para. 35 (Ex. 4) ("[T]he loss in value of shares of a company is a loss of all of the shareholders, not just one or some of them.  There is no logic that would allow only one shareholder to claim that loss, where the claim relates to wrongs done to the company, and all of the shareholders have suffered the loss in value.").

6

Canadian law is in accord with Delaware law, which "Massachusetts courts regularly find . . . [to be] persuasive" when analyzing corporate issues. *MAZ Partners LP v. Shear*, 204 F. Supp. 3d 365, 373 (D. Mass.), *on reconsideration in part*, 218 F. Supp. 3d 132 (D. Mass. 2016).[2]  In particular, during the pendency of Sinovac's motion to dismiss, the Supreme Court of Delaware issued a decision holding, under virtually indistinguishable facts, that a claim for wrongful dilution constituted a direct, and not derivative, claim.  *See Brookfield*, 261 A.3d 1251.  In *Brookfield*, plaintiffs alleged that Brookfield Asset Management—the controlling stockholder of TerraForm Power, Inc.—improperly caused TerraForm to fund a buyout of a renewable energy company through a private equity offering that permitted Brookfield to increase its equity ownership at an allegedly reduced rate.  *Id.* at 1257-60.  Following the offering, certain TerraForm shareholders filed a direct claim against Brookfield alleging, among other things, that Brookfield diluted "both the financial and voting interest of the minority stockholders."  *Id*. at 1260.  The Delaware Court of Chancery denied Brookfield's motion to dismiss plaintiffs' claim for wrongful dilution, and held that plaintiffs had standing to assert direct claims for lost value in their shares.  *Id.* at 1261.  Despite this ruling, the lower court noted conflicting authority under Delaware law, and allowed Brookfield to file an interlocutory appeal with the Delaware high court on the issue of whether plaintiffs' claim for wrongful dilution may be pursued as a direct, rather than derivative, claim. *Id*.

On September 20, 2021, the Supreme Court of Delaware reversed the lower court's denial of the motion to dismiss, holding that the wrongful dilution claim was an "exclusively derivative" claim that could not be asserted directly.  In reaching that conclusion, the Court held that to pursue

---

[2] Canadian courts also look to Delaware law for guidance. *E.g.*, *Pente Inv. Mgmt. Ltd. v. Schneider Corp.*, 1998 CarswellOnt 4035, para. 62 (Can. Ont. C.A.) (Ex. 1).

a direct claim, a "stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation." *Id*. at 1266. Because the "gravamen of Plaintiffs' Complaint is that the Private Placement allegedly harmed the Company by issuing shares to Brookfield for an unfairly low price and harmed the stockholders indirectly through economic and voting power dilution proportional to their shareholdings," and "the harm to the stockholders was not *independent* of the harm to the Company," the claim was derivative, and subject to substantive pre-suit demand requirements. *Id.* at 1268.

*Brookfield* is on all fours with the allegations Plaintiff makes here. As in *Brookfield*, Plaintiff's sole remaining claim is a claim for wrongful equity dilution. Order at 12-13. Also as in *Brookfield*, Plaintiff alleges that a controlling stockholder—here, Mr. Yin—used his influence to acquire additional equity in Sinovac for a reduced price. FAC ¶¶ 35-36, 57-58, 85-86. And, as in *Brookfield*, Plaintiff alleges that these actions were an "improper transfer of economic value and voting power from public shareholders . . . to controlling shareholders led by Yin." *Id*. ¶ 87. As Plaintiff's own allegations admit, the harm suffered was suffered by all "public shareholders" and was "not *independent* of the harm to the Company, but rather flowed indirectly to [Plaintiffs] in proportion to, and via their shares in," Sinovac. *Brookfield*, 261 A.3d at 1268; *see also* FAC ¶¶ 1, 87; *id.*, Prayer for Relief (seeking "damages to Plaintiff and the Class for losses sustained as a result of the Dilutive PIPE Transaction," and "equitable relief in the form of disgorgement of the wrongful proceeds derived by Defendants by virtue of their conduct described herein").

Under relevant Canadian and Delaware law, Plaintiff's claim for wrongful dilution should be construed as a derivative, and not direct, claim, and Sinovac respectfully submits that the Court erred in holding otherwise. *See Sinclair v. Ziff Davis, LLC*, No. 18-CV-790 (KMW), 2020 U.S. Dist. LEXIS 110627, at *3-4 (S.D.N.Y. June 24, 2020) (granting motion to reconsider, in part,

based on failure to give "full force" to preexisting case law); *Army v. CitiMortgage, Inc*., 140 F. Supp. 3d 149, 152 (D. Mass. 2015) (granting motion for reconsideration based on precedent that was not previously raised before the court); *Kakule v. Progressive Cas. Ins. Co*., No. 06-4995, 2007 U.S. Dist. LEXIS 44942, at \*3-4 (E.D. Pa. June 20, 2007) (granting motion for reconsideration due to misapplication of relevant Pennsylvania state law).

## II.    IN THE ALTERNATIVE, THE COURT SHOULD CERTIFY ITS RULING FOR INTERLOCUTORY APPEAL AND STAY THE PROCEEDINGS

If the Court is not inclined to reconsider its partial denial of Sinovac's motion to dismiss, Sinovac respectfully requests that the Court certify the issue for interlocutory appeal.  This Court may certify an otherwise non-appealable order for immediate interlocutory review by the Court of Appeals if (i) "such order involves a controlling question of law," as to which (ii) there is "substantial ground for difference of opinion," where (iii) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  As set forth below, the Order readily satisfies each of those criteria.

*First*, there can be no dispute that the issue of whether an action alleging wrongful dilution of all shareholders may be brought as a direct action under Section 204 of the IBCA, or instead must be brought as a derivative action under Section 201 of the IBCA, constitutes a "controlling question of law."  A question of law is "controlling" where "reversal of the district court's order would terminate the action," or where "the scope of the case would be . . . significantly altered." *Philip Morris Inc. v. Harshbarger*, 957 F. Supp. 327, 330 (D. Mass. 1997) ("[A]ll that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of the litigation in the district court.").  Moreover, "motions to dismiss based on the failure to state a claim present quintessential controlling questions of law for the purpose of § 1292(b)." *SEC v. Rocklage*, No. 05-CV-10074-MEL, 2005 U.S. Dist. LEXIS

53804, at *6 (D. Mass. Dec. 14, 2005).  Here, reversal of the Court's denial of Sinovac's motion to dismiss the wrongful dilution claim would terminate the action:  the Court has dismissed Plaintiff's claims for breach of fiduciary duties (Count I) and aiding and abetting that breach (Count II), Order at 11-12, and Plaintiff's claim for wrongful dilution (Count III) is all that remains of this action, *id.* at 15.  If Sinovac prevails on the issue of whether Plaintiff's wrongful dilution claim constitutes a derivative, rather than direct oppression claim, then—as the Court recognized—Plaintiff may not pursue the action in this Court "without first obtaining leave to file from the Antiguan High Court which it has neither sought nor obtained with respect to the claims asserted in this action."[3]  Order at 11.

*Second*, where, as here, an issue regarding foreign law is "novel and one for which there is little precedent," substantial ground for difference of opinion exists.  *See Wang v. Gen. Motors, LLC*, No. 18-10347, 2019 U.S. Dist. LEXIS 74166, at *4-5 (E.D. Mich. May 2, 2019).  As the Court recognized, "Section 204 has been subject to little interpretation by Antiguan courts," Order at 12, and the issue of whether Plaintiff's wrongful dilution claim constitutes a derivative, rather than direct oppression, claim under the IBCA is indisputably an issue of first impression before the First Circuit, or any court in the United States.  Both the novelty and difficulty of this issue give rise to a substantial ground for disagreement, which favors allowing interlocutory appeal.  *See Simmons v. Galvin*, No. 01-11040-MLW, 2008 U.S. Dist. LEXIS 132295, at *6 (D. Mass. Jan. 16, 2008) (certifying a claim for interlocutory appeal when "'difficult,' 'novel[,] and important' questions have not been addressed by the First Circuit").

---

[3] Moreover, the fact that the First Circuit can make such a determination with minimal review of the factual record militates in favor of allowing the appeal.  *Meijer, Inc. v. Ranbaxy Inc*., 245 F. Supp. 3d 312, 315 (D. Mass. 2017) (Gorton, J.).

*Third*, an interlocutory appeal would materially advance the ultimate termination of this case.  If the First Circuit determines that Plaintiff's wrongful dilution claim should proceed as a derivative rather than direct action, the FAC would be dismissed in its entirety and the action terminated, preventing protracted and expensive discovery and litigation before this Court.  *See Meijer*, 245 F. Supp. 3d at 315 ("The requirement that an appeal will materially advance the ultimate termination of the litigation is 'closely tied' to the controlling-question-of-law element."); *Simmons*, 2008 U.S. Dist. LEXIS 132295, at *6 ("[A] decision by the First Circuit before discovery and trial could save the substantial time and expense that will be necessary to resolve the VRA claim."); *Rocklage*, 2005 U.S. Dist. LEXIS 53804, at *8-9 ("reversal on interlocutory appeal would end the entire case and avoid complex, protracted, and expensive litigation").  And to the extent Plaintiff wishes to pursue its derivative claims under Antigua law as a shareholder of an Antiguan corporation, Plaintiff may seek leave to do so from an Antigua court.

*Finally*, Sinovac respectfully requests that the Court stay the action pending the disposition of this good faith motion and any interlocutory appeal.  The power to stay proceedings is part of a federal court's inherent power "when the efficacious management of court dockets reasonably requires such intervention."  *Marquis v. FDIC*, 965 F.2d 1148, 1154 (1st Cir. 1992).  A stay of these proceedings pending the Court's disposition of Sinovac's motion for reconsideration or alternatively, for certification of interlocutory appeal, will promote judicial economy, achieve substantial savings of time and expense, and will not unduly prejudice any party at this early stage of the litigation.  *See, e.g.*, *MAZ Partners, LP v. Shear*, No. 11-11099-GAO, 2011 U.S. Dist. LEXIS 171232, at *14 (D. Mass. Sept. 2, 2011) (court enjoys "broad discretion in ruling on pre-trial management matters"); *NPS, LLC v. Ambac Assurance Corp.*, 706 F. Supp. 2d 162, 167 (D. Mass. 2010) (granting stay when the moving party's motion "presents legal issues for which

further discovery would likely not be necessary"); *see also United States v. Joseph*, No. 19-cv-10141-LTS, 2020 U.S. Dist. LEXIS 182966, at *2 (D. Mass. Oct. 2, 2020) (granting defendants' motion to "stay further proceedings until their [interlocutory] appeals are resolved").

## **CONCLUSION**

For the foregoing reasons, Sinovac respectfully requests that the Court reconsider its denial of Sinovac's motion to dismiss Plaintiff's wrongful dilution claim, or, in the alternative, certify that denial for immediate interlocutory appeal, and stay all proceedings.


Dated:  March 21, 2022                                    Respectfully submitted,

                                                          LATHAM & WATKINS LLP

                                                          /s/ Eric F. Leon
                                                          Eric F. Leon (*pro hac vice*)
                                                          Jooyoung Yeu (*pro hac vice*)
                                                          1271 Avenue of the Americas
                                                          New York, NY 10020
                                                          (212) 906-1200
                                                          eric.leon@lw.com
                                                          jooyoung.yeu@lw.com

                                                          J. Christian Word (*pro hac vice*)
                                                          555 Eleventh Street NW, Suite 1000
                                                          Washington, DC 20004
                                                          (202) 637-2200
                                                          christian.word@lw.com

                                                          William J. Trach (BBO # 661401)
                                                          200 Clarendon Street
                                                          Boston, MA 02116
                                                          (617) 948-6000
                                                          william.trach@lw.com

                                                          *Attorneys for Defendant Sinovac Biotech Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those identified as non-registered participants on March 21, 2022.

<u>/s/ Eric F. Leon</u>
Eric F. Leon