UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HENG REN INVESTMENTS LP,<br><br>                Plaintiff,<br><br>      v.<br><br>SINOVAC BIOTECH LTD. and<br>WEIDONG YIN,<br><br>                Defendants. | Civil Action No. 1:19-cv-11612-NMG |

**JOINT STIPULATION AND [PROPOSED] PROTOCOL FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

This protocol will govern how Plaintiff Heng Ren Investments LP and Defendant Sinovac Biotech Ltd. (each a "Party" and collectively, the "Parties") manage discovery of electronically stored information ("ESI") in the above captioned action (the "Action"). The Parties may agree to modify or waive the terms of this Order in writing signed by counsel for the affected Parties.

The production specifications in this protocol apply to documents that are produced in the first instance in this Action. To the extent any Party is required or agrees to re-produce documents in this Action that originally were produced or prepared for production in other cases or government investigations, or by a non-party, such documents may be produced in the same format in which they originally were produced or prepared for production, including all objective coding or metadata fields required by this protocol to the extent reasonably available to the producing Party as part of the productions set. For any such re-production, the

1

producing Party is not obligated to re-format the prior production in accordance with the production specifications in this ESI Protocol, but must provide Bates numbering and confidentiality designations specific to this litigation. The Party receiving a production that was already produced in another matter reserves the right to request (i) the parameters used in searching and collecting the data, such as the date ranges, search terms and custodians (to the extent known by the producing Party); and (ii) that the production be produced in accordance with this protocol, about which the Parties agree to meet and confer in good faith.

All productions made pursuant to this protocol are subject to the stipulated protective order that is or will be entered in this matter ("Protective Order"). To the extent additional obligations or rights not addressed in this protocol arise under the Federal Rules of Civil Procedure, local rules, or applicable state, and federal statutes, they shall be controlling.

I.      **COOPERATION AND AMENDMENT**

The parties and the Court recognize that this Stipulation and Order is based on facts and circumstances as they are currently known to each Party, that the electronic discovery process is iterative, and that additions and modifications to this Order may become necessary as more information becomes known to the Parties. The Parties are aware of the importance the Court places on cooperation and agree to use their best efforts to comply with and resolve any differences concerning compliance with any provision of this Order.

Nothing herein shall preclude the Parties from agreeing in writing to amend or waive the terms of this Order. Nor shall anything herein preclude any Party from moving the Court to amend the terms of this Order for good cause shown, provided, however, that no Party may seek relief from the Court concerning compliance with the Order until it (i) has

met and conferred in good faith with any Parties involved in the dispute to resolve or narrow the area of disagreement; and (ii) has given any such Parties a reasonable opportunity to cure any claimed deficiency in compliance with this Order.

## II. LIMITATIONS AND NON-WAIVER

The Parties and their attorneys do not intend by this protocol to waive their rights to any protection or privilege, including but not limited to the attorney-client privilege, the work-product doctrine, and any data privacy restrictions that may be applicable, as discussed further below. All Parties and their attorneys are not waiving and specifically preserve their attorney-client privileges, work product protection, and other privileges or immunities. The Parties and their attorneys are not waiving, and specifically reserve, the right to object to any discovery request on any grounds. Further, nothing in this protocol shall be construed to affect the admissibility of documents and ESI. All objections to the discoverability or admissibility of any documents and ESI are preserved and may be asserted at any time.

## III. CUSTODIANS AND SOURCES

The Parties will provide a description of any potentially relevant data sources that have become unavailable for any reason (including as a result of document retention policies or practices), the circumstances resulting in the unavailability of such data sources, whether such information is available from other sources, and whether there exists any backup or copy of such original potentially relevant information. Consistent with Federal Rule of Civil Procedure 26(a)(l), the Parties have already disclosed the names of individuals likely to have discoverable information and a description by category or location of all documents, ESI, and tangible things that the Party has in its possession, custody, or control and may use to support its claims

or defenses, unless their use would be solely for impeachment. The Parties agree to supplement these disclosures as necessary. The Parties further agree to meet and confer in good faith to address any questions that any other Party may have regarding custodians or other sources of information in this Action.

The Parties retain the right, upon conducting investigation and discovery, to request that files from additional custodians and sources be searched and to meet and confer regarding such request; provided, however, that no Party shall be obligated to produce documents from custodial or non-custodial sources if such production would not be consistent with Rule 26(b) of the Federal Rules of Civil Procedure or other applicable law.

## IV.    SEARCH

The Parties will attempt in good faith to come to an agreement on the methods for identifying responsive information. The Parties will meet and confer regarding any proposed limitations on the scope of discovery, including custodians, custodial and non-custodial sources, date ranges, file types, or any additional proposed method to identify proportional documents for review (*e.g.*, use of search terms, technology-assisted-review, predictive coding, analytics or email thread suppression for production purposes).

The Parties agree that in responding to a Fed. R. Civ. P. 34 request, search terms may be used to identify documents. The Parties are not required to exchange search terms prior to the collection and production of documents. However, the Party requesting the documents retains the right to review the search terms used by the producing Party and to request that additional search terms be run. The Parties will negotiate in good faith to finalize a list of search terms reasonably designed to identify relevant documents.

Nothing contained herein is intended to or shall serve to limit a Party's right to conduct a review of documents, ESI or information (including metadata) for responsiveness and/or segregation of privileged and/or protected information before production.

V.      PRODUCTION FORMATS

With the exception of spreadsheets, presentation files, multi-media files and other native files that cannot be converted to image files, the Parties shall produce all relevant, responsive, and non-privileged ESI as Bates-stamped, single-page, 1-bit Tagged Image File Format ("TIFF") images with a load file in standard Opticon OPT that enables the document to be uploaded and viewed using standard litigation support software in accordance with the provisions below.  Unless excepted below, single page, 1-bit, black and white Group IV TIFFs shall be provided, at least 300 dots per inch (dpi) for all documents.  Original document orientation shall be maintained (*i.e.*, portrait to portrait and landscape to landscape).  Where the TIFF image is unreadable or has materially degraded the quality of the original, the producing Party shall provide a higher quality TIFF image or the native or original file.

    **a.**          *Production Media*.  The Parties shall produce documents in an encrypted format through electronic means, such as external hard drives, secure file sharing methods *(e.g.,* FTP), or readily accessible computer or electronic media *(e.g.,* CDs, DVDs) (collectively, "Production Media"), with explicit decryption instructions.  Productions shall have the following four directories and/or ZIP files: (1) IMAGES for the images; (2) DATA for the .dat and .opt files; (3) TEXT for the extracted text/OCR files; and (4) NATIVES for any native Excel or other files that cannot be understood reasonably unless displayed in native format.  The producing Party shall identify:  (a) the responding Party's name; (b) the

production date; and (c) the Bates Number range of the materials contained on the Production Media.

  **b.**  *Color.* If an original document contains color necessary to understand the meaning or content of the document, the producing Party shall honor reasonable requests for a color image and/or native file of the document. Color images shall be produced in single-page JPEG format.

  **c.**  *Foreign Language Documents.* Hard-copy documents and ESI that contains languages other than English, in whole or in part, shall be produced in the original language(s), as well as any other existing translations that exist within the possession, custody, or control of the Parties at the time of collection. No Party has any obligation to produce English translations of any ESI produced in this matter if such translations were created by, or at the direction of, legal counsel except that any Party that wishes to rely on a foreign language document in briefing, or at hearings, depositions, or trial must provide a certified translation of the document at the time. If a translation of a document is provided in briefing, or at hearings, depositions, or trial, the opposing Party reserves the right to (1) take a reasonable amount of time necessary to review the translation, which shall not take away from either Party's allotted time for the proceeding at issue and (2) assess the accuracy of the translation when it is provided, or within a reasonable amount of time following its provision, and to request any follow-up proceedings based on any disagreements about the accuracy of the translation.

  **d.**  *Unique IDs.* Images shall be produced using a unique file name that will be the Bates number of that page (*e.g.,* ABC000001.TIFF). The Bates number must appear on the face of the image and to the extent practical, not obliterate, conceal, or interfere with any

information from the source document. While Bates numbers will not appear on the face of the image for native documents produced, slip-sheets shall be provided in accordance with subsection (h).

  **e.**  *Parent-Child Relationships.* For ESI only, parent-child relationships (association between an attachment and its parent document) shall be preserved. The attachment(s) shall be produced adjacent to the parent document, in terms of Bates numbers, with the first attachment being named with the next sequential number after the parent, and any additional attachment(s) sequentially numbered after that first attachment.

  **f.**  *Redactions.* A party may use redactions to protect for privilege and to comply with any data restrictions that may be applicable. Each redaction on a document shall be electronically "burned" with the word "Redacted" onto the page or otherwise clearly indicate a redaction at or reasonably near the location of the redaction(s). If documents that the Parties have agreed to produce in native format need to be redacted, the Parties agree to redact the documents in a way that maintain proper formatting and usability. Extracted text will not be provided for electronic documents that have been redacted. Instead, these files shall be run through an OCR process to capture the visible text only and the results exchanged in lieu of the original extracted text.

  **g.**  *Confidentiality Designation.* Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order. Each responsive document produced in native format will have its confidentiality designation identified in the file name of the native file, indicated on its corresponding TIFF placeholder and/or set forth as a metadata field.

h.	*Metadata Fields.* Each of the metadata and coding fields set forth in Appendix A that can be reasonably and technically extracted shall be produced for that document. The Parties are not obligated to populate manually any of the fields in Appendix A if such fields cannot be reasonably and technically extracted from a document, with the exception of the following: (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH; (e) CONFIDENTIALITY, (f) REDACTED, and (g) CUSTODIAN, which shall be populated by the Party or the Party's vendor regardless of whether the fields can be populated under an automated process. Nothing herein shall require the Parties to create or produce metadata that does not exist or is not reasonably or technically accessible. Metadata subject to any data restriction laws that may be applicable, including but not limited to, personal information or state secrets, may be redacted.

i.	*Native Format.* The Responding Party shall produce spreadsheets *(e.g.,* Excel), presentation files *(e.g.,* PowerPoint), and any other materials not readily convertible to TIFF format *(e.g.* three-dimensional design files) in native format. To the extent that they are produced in this Action, audio, video, and multimedia files will be produced in native format. If a native file originally had track changes, comments, or other collaborative change features turned on, the TIFF file will display those changes in the converted image file. Native files shall be produced with a link in the NATIVEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields. For each native file produced, the production will include a ".tiff" image slip-sheet indicating the production number of the native file and the confidentiality designation and stating, "PRODUCED IN NATIVE FORMAT" (or substantially equivalent language). Native files will be produced in a separate folder on the

production media. TIFF images of e-mail messages shall include the BCC line. Upon request from the receiving Party that any files be produced in native format (identified by Bates number), the Parties agree to meet and confer in good faith concerning such requests. A request for such production shall not be unreasonably denied. The Parties agree to meet and confer regarding a protocol for use of native files at depositions, hearings, or trial.

**j.** *OCR*. Optical Character Recognition ("OCR") software shall be set to the highest quality setting during processing. Documents containing foreign language text will be OCR'ed using the appropriate settings for that language, *e.g.,* OCR of Chinese documents will use settings that properly capture Hanzi or any other type of Chinese characters contained in the documents. Settings such as "auto-skewing" and "auto-rotation" shall be turned on during the OCR process.

**k.** *Text Files*. For each produced document, a document-level text file shall be provided in addition to the image files (TIFFs). The text of native files shall be extracted directly from the native file and each text file will be named using its corresponding beginning bates number (*e.g.*, ABC000001.TXT). For ESI with redacted text, OCR data using a commercially acceptable technology shall be provided in lieu of text files. To the extent reasonably feasible, extracted text shall provide all comments, tracked changes, speaker's notes, and text from hidden worksheets, slides, columns and rows.

**l.** *Physical/Hard Copy Documents*. If the Parties intend to produce documents that exist solely in physical hard-copy format, they shall use their best efforts to do so in accordance with this ESI Protocol. The metadata shall indicate document breaks and identify the custodian or non-person custodial source from whom/where the document was

collected. The following objective coding fields shall be provided, if applicable: (1) beginning Bates number, (2) ending Bates number, (3) page count, and (4) source location/custodian. The documents shall be logically unitized. The Parties will make their best efforts to have their vendors unitize documents correctly and will commit to address situations where there are improperly unitized documents. The ".tiff" files shall be subject to an OCR process. The Parties will meet and confer to address instances of undue burden and will work to negotiate an appropriate solution.

  **m.**  *Hidden Text.* ESI shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text, notes, or worksheets, speaker notes, tracked changes, redlines and comments. Upon request, a producing Party will produce non-privileged files with any such information in native format.

  **n.**  *Databases and Other Structured Data.* To the extent that any Party requests data or information (other than email) that is stored in a structured database (including but not limited to Oracle, SQL Server, D82, Microsoft Access (*.mdb), Lotus Notes/Domino Server non-email databases), the producing Party will make reasonable efforts to determine whether such data can be produced and, if so, make a production in existing report formats, or report formats that can be developed without undue burden. Information produced from the database as a result of a report or query will be produced in a reasonably usable and exportable electronic file (for example, *.csv and/or *.xls formats) for review by the requesting Party, containing fields and reference points requested by the requesting Party to the extent they exist, are responsive, and are reasonably accessible. To the extent this production format is not

feasible or causes the producing Party undue burden, the Parties agree to meet and confer to discuss a different form of production.

     **o.**    *Duplicates.* The responding Party may use software to identify duplicate documents that are in files of individual or multiple production custodians. To the extent there are duplicate documents, the responding Party need only produce a single copy of a responsive document, unless the requesting Party reasonably requests the duplicate document for a legitimate reason. Removal of duplicate documents shall only be done on exact duplicate documents (based on MD5 or SHA-1 hash values, at the family level only). Attachments shall not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. Removal of near-duplicate documents and e-mail thread suppression is not acceptable. De-duplication shall be done across the entire collection (*i.e.*, global level) and the custodian and path information will be provided for each document. This means each document will show all custodians who had a copy of the same document which is not being produced because of de-duplication in the ALL_CUSTODIANS field. The presence of a custodian's name contained in the ALL_CUSTODIANS field for a particular document evidences, and suffices to make a threshold showing, that the custodian possessed that Document in his/her custodial file. To accommodate for rolling productions, for ESI that is removed as a duplicate from earlier productions, the producing Party shall provide an overlay file along with or within a reasonable time after each production.

     **p.**    *Compressed Files Types.* Compressed file types (*e.g.*, .ZIP, .RAR, .CAB, .Z) shall be decompressed so that the lowest level document or file is extracted.

  **q.** *Searchable Text.* Text will be extracted directly from the native electronic file of ESI unless the document requires redaction, is an image file or is any other native electronic file that does not contain text to extract *(e.g.,* non-searchable PDFs), in which case Searchable Text may be created using OCR. Extracted text will include all comments, revisions, tracked changes, speaker's notes and text from Documents with comments or tracked changes, and hidden worksheets, slides, columns and rows. Extracted text from e-mails will include all header information that would be visible if the e-mail was viewed natively unless the email requires redaction, including: (1) the individuals to whom the communication was directed; (2) the author of the e-mail communication; (3) who was copied and blind copied on such e-mail; (4) the subject line of the e-mail; (5) the date and time of the e-mail; and (6) the names of any attachments.

  **r.** *Encrypted or Password-Protected ESI.* For any ESI that exists in encrypted format or is password-protected, the producing Party will reasonably attempt to produce such materials in a format that permits the receiving Party to access the contents of those materials, or, if practicable, will provide the propounding party a means to gain access to those native files (for example, by supplying passwords). No extraordinary means need to be taken by the producing Party to permit the receiving Party to access the contents of those materials.

## VI. PRIVILEGE LOG AND TREATMENT OF PRIVILEGED MATERIALS

  **a.** *Privilege Log.* Should any documents be withheld, in whole or in part, by either Party on the basis of attorney/client privilege, work-product privilege, a joint-defense privilege or any other applicable privilege, immunity or protective doctrine, the withholding Party will provide a privilege log in accordance with Fed. R. Civ. P. 26(6)(5) and as set forth in

the Protective Order. Communications between appearing counsel and/or their respective firms and their clients in this matter or any matter related thereto, need not be logged.

    **b.**        If any Party reasonably believes that a privilege log entry does not provide sufficient information to evaluate or challenge the claim of privilege or protection, such Party shall reasonably and promptly after receiving the privilege log provide a written description of the reasons for its belief. The Party who provided the privilege log in question shall have the opportunity to amend the privilege log or to produce sufficient factual information, including by affidavit, to establish the factual basis for each claim of privilege or protection that has been claimed. The Parties thereafter shall meet and confer in good faith in an effort to resolve the dispute. If the Parties cannot resolve the dispute, the Party challenging the claim for privilege may seek relief from the Court.

    **c.**        *502(d) Order and Clawback Procedure.* This Order is entered pursuant to Rule 502(d) of the Federal Rules of Evidence. Subject to the provisions of this Order, if the producing Party discloses information in connection with the Action that the producing Party thereafter claims to be privileged, protected by the attorney-client privilege or work product protection ("Protected Information"), the disclosure of that Protected Information will not constitute or be deemed a waiver or forfeiture in this or any other action of any claim of privilege or work product protection that the producing Party would otherwise be entitled to assert with respect to the Protected Information and its subject matter.

This Order protects *any* disclosure of Protected Information, whether that disclosure is inadvertent or otherwise.

Each party is entitled to decide, in its sole discretion, the appropriate degree of care to exercise in reviewing materials for privilege. Irrespective of the care that is actually exercised in reviewing materials for privilege, the Court hereby orders that disclosure of Protected Information in discovery conducted in this litigation shall not waive any claim of privilege or work product protection that the producing Party would otherwise be entitled to assert with respect to the Protected Information and its subject matter.

A producing Party must notify the party receiving the Protected Information, in writing, that it has disclosed that Protected Information without intending a waiver by the disclosure. Upon receipt of notification, the receiving Party shall immediately take all reasonable steps to destroy or return all copies, electronic or otherwise, of such document or other information, and shall provide a certification that it will cease further review, dissemination, and use of the Protected Information.

This Order shall be interpreted to provide the maximum protection allowed to the Disclosing Party by Federal Rule of Evidence 502(d). The provisions of Federal Rule of Evidence 502(b)(2) are inapplicable to the production of Protected Information under this Order. However, if for any reason, a Court finds that this Section is inapplicable to Protected Information, then Rule 502(b) will apply in its absence.

**IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD:**

Dated: November 2, 2023

/s/ Stephen Ryan, Jr.
Stephen Ryan, Jr. (BBO # 669727)
BEATON AND PETERSEN PLLC
11 Maple Avenue
Shrewsbury, MA 01545
Telephone: (508) 842-2540
stephen@beatonpetersen.com

*Attorney for Plaintiff*
*Heng Ren Investments LP*

Respectfully submitted,

/s/ Eric F. Leon
Eric F. Leon (*pro hac vice*)
Jason C. Hegt (*pro hac vice*)
Jooyoung Yeu (*pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
eric.leon@lw.com
jason.hegt@lw.com
jooyoung.yeu@lw.com

William J. Trach (BBO # 661401)
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 948-6000
Facsimile: (617) 948-6001
william.trach@lw.com

*Attorneys for Defendant*
*Sinovac Biotech Ltd.*

IT IS SO ORDERED.

Dated: 11/14/2023

_____
Nathaniel M. Gorton
United States District Judge

## Appendix A: ESI Metadata and Coding Fields

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| BegDoc | Bates number of the first page of the document. | All | Prefix-0000000001 |
| EndDoc | Bates number of the last page of the document. | All | Prefix-0000000002 |
| BegAttach | Bates number of the first page of the first document of the document family. | All | Prefix-0000000001 |
| EndAttach | Bates number of the last page of the last document of the document family. | All | Prefix-0000000004 |
| Company | Party making the production | All | Company Name |
| Prod Volume | Production Volume | All | DEFVOL0001 |
| Page Count | Number of printed pages in the document. | All | 2 |
| Confidentiality | Confidentiality designation, if any, of the document | All | Confidential |
| Custodian | The name of the first-processed custodian or data source the files belong to. For persons, this field shall be populated as last name, first name. | All | Doe, John |
| All Custodians | All processed custodians, including the primary or first-processed custodian, who were in possession of a de-duplicated document. For persons, this field shall be populated as last name, first name. Multiple custodian names shall be delimited by semicolons. | ESI | Doe, John; Smith, John; Smith, Jane |
| From | The name and email address of the sender of the email. | Emails | Jane.Doe@email.com |
| To | All recipients that were included on the "To" line of the email. | Emails | John.Doe@email.com |
| CC | All recipients that were included on the "CC" line of the email. | Emails | Bill.Black@email.com |
| BCC | All recipients that were included on the "BCC" line of the email. | Emails | ceo-gs@email.com |

16

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| Author | Document author/creator | E-attachments; Electronic documents | John Doe |
| Date Sent | Date an email was sent. | Emails | 01/01/2015 |
| Time Sent | Time an email was sent. | Emails | 12:30:00 |
| Date Modified | Date the document was last modified. | E-attachments; Electronic documents | 01/01/2015 |
| Time Modified | Time the document was last modified. | E-attachments; Electronic documents | 12:30:00 |
| Date Created | Date the document was created. | E-attachments; Electronic documents | 01/01/2015 |
| Time Created | Time the document was created. | E-attachments; Electronic documents | 12:30:00 |
| Email Subject | Subject line of an email. | Emails | Text of the subject line |
| Doc Title | Title of document | E-attachments; Electronic documents | Smith Summary |
| File Name | File name of original document | Electronic documents; E-attachments | Microsoft Word 2007/2010 |
| File Type | Application type | Electronic documents; E-attachments | Word |
| File Extension | The file extension of the document. | E-attachments; Electronic documents | .doc |
| Hash | MD5 or SHA-1 Hash value | Electronic documents; E-attachments; Emails | |
| File Path | The original file path to the source location of the native file in original environment (*e.g.*, local folder, network folder, email folder, or files and/or mail store, etc.). The file path shall be prepended with the Custodian name. | All | \Doe_Jane\My_docs\ |
| Redacted | Whether a document has been redacted. | All | Yes; Redacted |

17

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| Native Link | Relative file path to each native file on the production media. | All documents produced in native format | \Natives\Document 12345.doc |
| Text Link | Relative file path to each extracted text/OCR text file on the production media. | All | \Text\Document 12345.txt |

## CERTIFICATE OF SERVICE

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those identified as non-registered participants on November 2, 2023.

                                              /s/ Eric F. Leon
                                              Eric F. Leon